UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEITH TERRELL BUTLER,

                              Plaintiff,
                                                                     9:08-CV-0533
v.                                                            (DNH/GHL)

L. TUPER, III., Corrections Officer, Upstate C.F.;
and STATE OF NEW YORK,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

KEITH TERRELL BUTLER, 05-A-1392
  Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, NY 14011

GEORGE H. LOWE, United States Magistrate Judge

## ORDER and SUPPLEMENTAL REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable David N. Hurd, United States District Judge, to hear and determine all pretrial matters (of a non-dispositive nature) and issue report-recommendations on all dispositive matters before the Court, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

      On June 12, 2008, I issued (1) an Order denying without prejudice Plaintiff's first motion to proceed *in forma pauperis* (due to his failure to complete the Certificate at the end of the Northern District's form Application to Proceed without the Full Prepayment of Fees), and (2) a Report-Recommendation that the Court *sua sponte* dismiss Plaintiff's original Complaint (pursuant to 28 U.S.C. §§ 1915[e][2][B][ii], 1915A, and Fed. R. Civ. P. 12[h][3]) if he has not,

within thirty (30) days, done the following two things: (1) either pay the Court's filing fee of three hundred fifty dollars ($350), or file a second motion to proceed *in forma pauperis* (containing a completed Certificate at the end of the above-referenced Application); *and* (2) file an Amended Complaint that corrects the deficiencies identified in his original Complaint. (Dkt. No. 6.)

On July 7, 2008, Plaintiff filed an Amended Complaint. (Dkt. No. 7.) Furthermore, on July 21, 2008, he filed a second motion to proceed *in forma pauperis*. (Dkt. No. 8.) For the reasons discussed below, I grant Plaintiff's second motion to proceed *in forma pauperis*. In addition, I supplement my Report-Recommendation so as to recommend the *sua sponte* dismissal of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and Fed. R. Civ. P. 12(h)(3).

I.  SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT

Construed with the extra leniency normally afforded to pleadings drafted by *pro se* civil rights litigants, Plaintiff's Amended Complaint alleges that, on January 22, 2008, at Upstate Correctional Facility ("Upstate C.F."), Correctional Officer L. Tuper, III ("Defendant Tuper"), denied Plaintiff's request for his scheduled meal because (1) Plaintiff had just returned from a "callout [for] a legal visit," and/or (2) Plaintiff is Black. (Dkt. No. 7.) In addition, Plaintiff's Amended Complaint alleges that Defendant Tuper called him a racial epithet. (*Id*.) As a result of these actions, Plaintiff's Amended Complaint alleges that Defendant Tuper violated Plaintiff's following constitutional rights: (1) his First Amendment right to be free from retaliation taken against him in response to his engaging his constitutionally protected activity; (2) his Eighth Amendment right to be free from cruel and unusual prison conditions; (3) his Fourteenth

Amendment right of procedural due process; and (4) his Fourteenth Amendment right of equal protection under the laws.  (*Id.*)

It should be noted that the substance of Plaintiff's Amended Complaint is virtually identical to the substance of his original Complaint, with three exceptions: (1) his Amended Complaint alleges that the referenced "callout" (from which Plaintiff had returned before he was deprived of his meal) was a callout for "a legal visit"; (2) his Amended Complaint alleges that, by denying him the single meal in question, Defendant Tuper denied Plaintiff "adequate food"; and (3) his Amended Complaint attaches four hand-written pages essentially constituting an essay on racial discrimination and affirmative action.  (*Compare* Dkt. No. 1, ¶ 6 [Plf.'s Original Compl.] *with* Dkt. No. 7 [Plf.'s Am. Compl.].)

## II.   DISCUSSION

### A.   Plaintiff's Second Motion to Proceed *In Forma Pauperis*

In his second motion to proceed *in forma pauperis*, Plaintiff has *failed* to correct the deficiency identified in his first such motion.  (*See* Dkt. No. 6, at 3-4 [Report-Recommendation]; *compare* Dkt. No. 2, at 2 [Plf.'s First Motion] *with* Dkt. No. 8, at 2 [Plf.'s Second Motion].) Specifically, he has failed to complete the Certificate at the end of the Northern District's form Application to Proceed without the Full Prepayment of Fees.  (Dkt. No. 8, at 2 [Plf.'s Second Motion].)

However, I note that Plaintiff has corrected the portion of his Application in which he swears that he possesses no cash account at his *current* place of incarceration, i.e., Attica Correctional Facility (not Upstate Correctional Facility, as stated in his first Application). (Dkt. No. 8, ¶¶ 1, 4 [Plf.'s Second Motion].)  Moreover, I am mindful that Plaintiff is proceeding *pro se*

in a civil rights action, and thus should be afforded a certain amount of special leniency. Finally, I note that, practically speaking, the issue of whether or not Plaintiff should be granted leave to proceed *in forma pauperis* is of little significance since I have found that his Amended Complaint should be *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and Fed. R. Civ. P. 12(h)(3)

For each of these reasons, I grant Plaintiff's second motion to proceed *in forma pauperis*. In addition, I withdraw that portion of my Report-Recommendation of June 12, 2008, recommending dismissal of Plaintiff's action if he does not, within thirty (30) days of the date of the Court's final Order with respect to this Report-Recommendation, file a second motion to proceed *in forma pauperis* in which he has completed the Certificate at the end of the Northern District's form Application to Proceed without the Full Prepayment of Fees. (Dkt. No. 6, at 4, 14.)

    **B.**    **Deficiencies in Plaintiff's Amended Complaint**

As I found with regard to Plaintiff's original Complaint, I find that Plaintiff's Amended Complaint is subject to *sua sponte* dismissal (pursuant to 28 U.S.C. §§ 1915[e][2][B][ii], 1915A, and Fed. R. Civ. P. 12[h][3]) because (1) the Eleventh Amendment bars Plaintiff's claim against Defendant State of New York, and (2) Plaintiff has failed to allege facts plausibly suggesting any actionable claim against Defendant Tuper.

    **1.**    **Sovereign Immunity Under Eleventh Amendment**

The Eleventh Amendment recognizes the fundamental principle of sovereign immunity: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State,

or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court. *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Furthermore, where it has been successfully demonstrated that a defendant is entitled to sovereign immunity, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) [citation omitted]; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, Plaintiff has continued to name the "State of New York" as a Defendant in his action, despite having been advised of the deficiencies in such a claim. (*Compare* Dkt. No. 6, at 4-5 [Report-Recommendation] *with* Dkt. No. 7 [Plf.'s Am. Compl.].) Moreover, Plaintiff has alleged no facts plausibly suggesting any liability from which the State of New York need even be immune. (*See generally* Dkt. No. 7 [Plf.'s Am. Compl., failing to assert any factual allegations at all regarding the State of New York].)

For these reasons, I supplement my Report-Recommendation of June 12, 2008, so as to recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts any claims against the State of New York (due to the Eleventh Amendment).

   **2.  Failure to State a Claim**

     **a.  First Amendment Retaliation Claim**

Claims of retaliation like the claim asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which

would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

Here, Plaintiff has alleged that Defendant Tuper took adverse action against him (i.e., by denying him a meal and calling him a racial epithet) following Plaintiff's return from a "callout [for] a legal visit." (Dkt. No. 7, at 1 [Plf.'s Am. Compl.].) For the sake of argument, I will assume that Plaintiff's attending a "callout [for] a legal visit" was activity that was protected under the First Amendment. The problem, at least from Plaintiff's perspective, is that his retaliation claim is plagued by two fatal flaws.

First, the denial of one meal, even if inflicted against a prisoner in response to his having engaged in protected activity, is generally too *de minimis* in nature to constitute adverse action for purposes of a First Amendment retaliation claim. *Snyder v. McGinnis*, 03-CV-0902, 2004 U.S. Dist. LEXIS 17976, at *33-34 (W.D.N.Y. Aug. 31, 2004).

Second, and more importantly, Plaintiff has alleged no facts plausibly suggesting[1] that

---

[1] I note that, in *Phillips v. Girdich*, the Second Circuit stated that the legal claims asserted by a *pro se* civil rights litigant should be limited only by what legal claims his factual allegations *conceivably* suggest, not what they "plausibly" suggest. *See* 408 F.3d 124, 130 (2d Cir. 2005) ("It is enough that [*pro se* litigants] allege that they were injured, and that their allegations can conceivably give rise to a viable claim . . . . [T]he court's imagination should be limited only by Philips' factual allegations . . . .") [emphasis added; citations omitted]. To the extent that *Phillips* was based on a *conceivability* standard as opposed to a *plausibility* standard, I interpret *Phillips* to have been abrogated by the Supreme Court's decision last year in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-74 (2007) (rather than turn on the "conceivab[ility]" of an actionable claim," the Rule 8 standard turns on the "plausibility" of an actionable claim in that his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]"). I note also that the Second Circuit has repeatedly recognized the controlling nature of the clarified plausibility standard that was articulated by the Supreme Court in *Twombly*. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original]; *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("We affirm the district court's dismissal of the conspiracy claims because plaintiffs are unable to allege facts that would provide 'plausible grounds to infer an agreement' [under *Bell Atlantic v. Twombly*]"); *cf. Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008)

Defendant Tuper took the asserted adverse action against him *because* he had engaged in the protected activity in question. Rather, what few factual allegations there are plausibly suggest that Defendant Tuper took that adverse action solely because of Plaintiff's race. (Dkt. No. 7, at 1 [Plf.'s Am. Compl.].) *Having* a certain race is not activity protected by the First Amendment. Rather, an allegation that adverse action was taken because of race is essentially an Equal Protection claim, which is discussed below in Part II.B.2.d. of this Supplemental Report-Recommendation.

For each of these reasons, I supplement my Report-Recommendation of June 12, 2008, so as to recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts a First Amendment retaliation claim.

### b. Eighth Amendment Inadequate Prison Conditions Claim

Generally, to prevail on a claim of inadequate prison conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

Here, Plaintiff alleges that his inadequate prison conditions consisted of (1) his being denied a single meal and (2) his being called a racial epithet. (*See* Dkt. No. 7, at 1-2 [Plf.'s Am. Compl.].) The denial of a single meal does not constitute an injury serious enough to support an Eighth Amendment claim. *See Zigmund v. Foster*, 97-CV-1989, 1998 U.S. Dist. LEXIS 22997,

---

("*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted].

at *9-10 (D. Conn. Feb. 6, 1998) (*sua sponte* dismissing complaint for failure to state claim because deprivation of one meal did not constitute Eighth Amendment violation); *Brewton v. Hollister*, 948 F. Supp. 244, 251 (W.D.N.Y. 1996) (granting defendants' motion to dismiss plaintiff's complaint for failure to state claim because, *inter alia*, deprivation of one meal did not constitute Eighth Amendment violation); *McLeod v. Scully,* 81-CV-3189, 1984 U.S. Dist. LEXIS 24731, at *5 (S.D.N.Y. July 30, 1984) (denial of one meal per day during eight-day lockdown did not rise to level of Eighth Amendment violation).  Rather, States are required by the Eighth Amendment to furnish prisoners only with reasonably adequate food, i.e., containing a certain nutritional value and caloric amount. (*Id*.)  Plaintiff does not allege facts plausibly suggesting that Defendant Tuper, over the course of several days or even a single day, denied Plaintiff a diet that contained the required amount of nutrients and calories. (*See* Dkt. No. 7, at 1-2 [Plf.'s Am. Compl.].)

Furthermore, the use of a racial epithet by a correctional officer–though certainly deplorable–does not violate the Eighth Amendment. *Kemp v. LcClaire,* 03-CV-0844, 2007 U.S. Dist. LEXIS 21342, at *19 (W.D.N.Y. March 12, 2007) ("[T]he use of racial epithets, racially prejudicial insults and name-calling, without more, does not violate the Constitution.") [citations omitted]; *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) ("Brown's claims of racial slurs or epithets reflecting racial prejudice cannot form the basis of a claim under § 1983.") [citations omitted]; Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995) ("[T]he taunts, insults and racial slurs alleged to have been hurled at plaintiffs by defendants, while reprehensible if true, do not comprise an infringement of constitutional guarantees.") [citations omitted]; *Wright v. Santoro*, 714 F. Supp. 665, 667 (S.D.N.Y. 1989) (racially derogatory remarks

9

by a guard do not violate an inmate's constitutional rights) [citations omitted], *aff'd*, 891 F.2d 278 (2d Cir. 1989); *cf. Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (McAvoy, C.J.) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional claim cognizable under § 1983.") [citations omitted].

For each of these reasons, I supplement my Report-Recommendation of June 12, 2008, so as to recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts an Eighth Amendment inadequate prison conditions claim.

### c.    Fourteenth Amendment Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon*, 494 U.S. at 125 [internal quotations marks and citation omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*." *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id*.

Plaintiff expressly characterizes his due process claim as a "procedural due process" claim. (*See* Dkt. No. 7, at 2 [Plf.'s Am. Compl.].) He also explains that his due process claim is based on the fact that Defendant Tuper deprived Plaintiff of "life, liberty, or property without

[following] certain procedures," and without affording Plaintiff "enough procedural protection." (*Id*.)  Moreover, I have found no reason to construe Plaintiff's factual allegations as attempting to assert, or as actually giving rise to, a substantive due process claim.  (*See* Dkt. No. 7, at 2 [Plf.'s Am. Compl.].)  For these reasons, I analyze Plaintiff's Fourteenth Amendment due process claim as a procedural due process claim.

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ."  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  With regard to the first step, in 1995 the Supreme Court held that liberty interests protected by the Fourteenth Amendment's Due Process Clause "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).

Here, Plaintiff has alleged no facts plausibly suggesting that the deprivation in question imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life.  (*See* Dkt. No. 7, at 1-2 [Plf.'s Am. Compl.].)

For this reason, I supplement my Report-Recommendation of June 12, 2008, so as to recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts a Fourteenth Amendment procedural due process claim.

### d.     Fourteenth Amendment Equal Protection Claim

To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or

purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.). However, generally, the disparate treatment must be more than the use of racially discriminatory language. *See*, *infra*, notes 2-3 of this Supplemental Report-Recommendation.

Granted, it is possible that the use of a racial epithet *accompanied by* certain adverse action by a correctional officer may, in certain circumstances, constitute a violation of the Equal Protection Clause of the Fourteenth Amendment.[2] However, the "certain circumstances" referenced are circumstances in which the adverse action has caused the prisoner some sort of *physical injury*: if there has been no physical injury, there has been no violation of the Equal Protection Clause (or any other provision of the Constitution).[3]

---

[2]    *See King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) ("[T]he use of racially discriminatory language can provide some evidence of a discriminatory purpose [under the Equal Protection Clause of the Fourteenth Amendment] when that language is coupled with some additional harassment or constitutional violation."); *cf. Williams v. Bramer*, 180 F.3d 699, 701 (5th Cir. 1999) ("While the use of [a racial] epithet is compelling evidence of racial animus, which establishes that the officer's conduct may be motivated by race, the plaintiff must still show that the officer engaged in specific conduct that denied him equal protection of the laws.").

[3]    *Brown v. Croce,* 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (use of racial slurs and epithets accompanied by two slaps in face with no physical injury did not amount to constitutional violation, as a matter of law) [citations omitted]; *see also Hutch v. Dept. of Corr.*, No. 90-16426, 1993 WL 164890, at *1 (9th Cir. May 18, 1993) (affirming district court's decision dismissing prisoner civil rights claim as frivolous where plaintiff alleged that "he was denied breakfast twice, called names by a prison guard, not given the correct religious diet on one occasion, and . . . did not receive regular mail delivery on four occasions"); *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) ("[A]lthough Taylor contends that the physical threat and detention satisfies the harassment or other conduct requirement [sufficient to give rise to a claim for a violation of the Equal Protection Clause], we are not persuaded. We conclude that the district court correctly held that the totality of the actions alleged by Taylor did not transform the outburst and following separation into a deprivation of constitutional rights."); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (use of derogatory racial epithets in

Here, Plaintiff has alleged no facts plausibly suggesting that Defendant Tuper caused him any physical injury (e.g., in a way that required medical care) when Defendant Tuper directed the racial epithet at him and denied him a single meal.  (*See* Dkt. No. 7, at 1-2 [Plf.'s Am. Compl.].)

In addition, I note that, to the extent Plaintiff is trying to allege that the Equal Protection Clause violation he experienced caused him a "physical injury" that was essentially *emotional* in nature (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.), such a claim would appear to be barred also by the Prison Litigation Reform Act of 1995 ("PLRA").  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Todd v. Graves*, 217 F. Supp.2d 958, 961-62 (S.D. Iowa 2002) (applying 42 U.S.C. § 1997e[e] to prisoner's Equal Protection claim under Fourteenth Amendment).[4]

---

addition to imposition of 14-hour delay in bringing plaintiff before magistrate judge did not violate Due Process Clause of Fourteenth Amendment) [citations omitted]; *cf. Vilkhu v. City of New York*, 06-CV-2095, 2008 WL 1991099, at *5 (S.D.N.Y. May 5, 2008) (plaintiff stated claim for violation of Equal Protection Clause where he "alleged that racial epithets were directed at him while he was being physically assaulted by the officer defendants [which resulted in need for medical care].").

[4]   I note that numerous courts have held–correctly, I believe–that physical manifestations of emotional injuries are not "physical injuries" for purposes of the PLRA.  *See, e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3 (M.D. Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL 3408176, at *4

For these reasons, I supplement my Report-Recommendation of June 12, 2008, so as to recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts a Fourteenth Amendment equal protection claim.

### e. Denial of Opportunity to Amend Allegations During Appeal from this Supplemental Report-Recommendation

In light of Plaintiff's prolific nature as a litigant,[5] I anticipate that, during his likely objections to this Supplemental Report-Recommendation, he will attempt to amend the allegations of his Amended Complaint. I respectfully recommend that the Court, in exercising its discretion on the matter, decline to permit him to so amend his Amended Complaint.

Assuming for the sake of argument that Plaintiff is entitled to the full measure of special

---

(M.D. Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams*, 03-CV-0192, 2005 WL 5993338, at *4 (N.D. Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F. Supp.2d 200, 203, 205 (D. Me. 2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves*, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

[5] *See, e.g., Butler v. Jones*, 03-CV-1779 (E.D.N.Y.) (prisoner civil rights action); *Butler v. Mafaro*, 05-CV-0546 (S.D.N.Y.) (prisoner civil rights action); *Butler v. Smith*, 07-CV-0431 (N.D.N.Y.) (Scullin, J.) (prisoner civil rights action); *Butler v. Martin*, 07-CV-0521 (N.D.N.Y.) (Scullin, J.) (prisoner civil rights action); *Butler v. Hogue*, 08-CV-0264 (N.D.N.Y.) (Sharpe, J.) (prisoner civil rights action, filed March 7, 2008); *Butler v. Hyde*, 08-CV-0299 (N.D.N.Y.) (Kahn, J.) (prisoner civil rights action, filed March 14, 2008).

leniency normally afforded *pro se* civil rights litigants (despite his acquisition of some litigation experience), such leniency does not in any way require the Court to grant Plaintiff an opportunity to amend his pleading because he has *already* been given a chance to amend his pleading (i.e., through the filing of an Amended Complaint).[6] Rather, the decision of whether or not to accept such a proposed amendment rests in the sound discretion of the district court. *See Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and we have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J., of the Northern District of New York) [citations omitted].

Here, Plaintiff has already had the benefit of (1) my Report-Recommendation of June 12, 2008, detailing the deficiencies in his original Complaint, and (2) a full and fair opportunity to correct those deficiencies through the filing of an Amended Complaint. Permitting him to assert self-serving allegations at the last minute, during an appeal from this Supplemental Report-Recommendation, would undermine the "[c]onsiderations of efficiency and fairness [that] militate in favor of a full . . . submission for the Magistrate Judge's consideration." *Hynes*, 143

---

[6] *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

F.3d at 656.

For these reasons, I recommend that the Court, in exercising its discretion on the issue, deny any request by Plaintiff to amend the allegations of his Amended Complaint, during any objections to this Report-Recommendation.

### 3. Exhaustion of Administrative Remedies and Material Misrepresentation to the Court

In his Amended Complaint, Plaintiff has removed the factual allegations that had caused me to recommend the dismissal of his original Complaint based on (1) his failure to exhaust his administrative remedies and (2) his making of a sworn material misrepresentation to the Court. (*See* Dkt. No. 6, at 8-13 [Report-Recommendation]; *compare* Dkt. No. 1, ¶ 6 [Plf.'s Original Compl.] *with* Dkt. No. 7 [Plf.'s Am. Compl.].)  In addition, I find that it is not necessary to base the dismissal of Plaintiff's action on the fact that made a sworn material misrepresentation to the Court because, as explained above in this Supplemental Report-Recommendation, grounds already exist to dismiss his action.

For these reasons, I withdraw that portion of my Report Recommendation of June 12, 2008, recommending dismissal of Plaintiff's action based on (1) his failure to exhaust his administrative remedies and (2) his making of a sworn material misrepresentation to the Court.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's second motion to proceed *in forma pauperis* (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that the Court *sua sponte* **DISMISS** Plaintiff's Amended Complaint (Dkt. No. 7), pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and Fed. R. Civ. P. 12(h)(3).

**BE ADVISED that any objections to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance**.[7]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

---

[7] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18, n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

Dated: August 5, 2008
      Syracuse, New York

*George H. Lowe*
George H. Lowe
United States Magistrate Judge